# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Tasha W., | Case No. 17-cv-4933-KMM |
| Plaintiff, | |
| v. | **ORDER** |
| Nancy A. Berryhill, | |
| Defendant. | |

---

This matter is before the Court on the parties' cross-motions for summary judgment. (Pl.'s Mot. for Summ. J. ("Pl.'s Mot."), ECF No. 17; Def.'s Mot. for Summ. J. ("Def.'s Mot."), ECF No. 19.) For the reasons set forth below, the Court recommends that Tasha W.'s (hereafter Ms. W) motion for summary judgment be DENIED and the Commissioner's motion for summary judgment be GRANTED.

## I.  Procedural History and ALJ Decision

On June 9, 2014, Ms. W. applied for supplemental security income, alleging disability beginning June 1, 2012 due to diabetes mellitus, depression, schizophrenia, foot pain due to diabetes mellitus, and high blood pressure. (R. 10, 252.) Her claim was originally denied on October 3, 2014, and again upon reconsideration on March 20, 2015. (R. 10.) Ms. W. filed a written request for a hearing on April 21, 2015, and a hearing was held on August 5, 2016 before Administrative Law Judge Roger W. Thomas. (*Id.*) ALJ Thomas issued an unfavorable decision on September 19, 2016. (R. 24.) Ms. W. then requested review by the Appeals Council, which denied her request (R. 6), making the ALJ's decision the final decision ripe for judicial review. *E.g., Sims v. Apfel*, 530 U.S. 103, 107 (2000).

ALJ Thomas performed the five-step sequential evaluation process to determine whether Ms. W. was disabled. At Step 1, he found that Ms. W. had not engaged in substantial gainful activity since the application date. (R. 12.) Although

1

Ms. W. does work part time, ALJ Thomas determined that this work did not rise to the level of substantial gainful activity. (*Id.*)

At Step 2, ALJ Thomas found that Ms. W. had severe impairments caused by schizophrenia/schizoaffective disorder and cognitive limitations. (*Id.*) He acknowledged that Ms. W. had been diagnosed with diabetes mellitus and had a history of deep vein thrombosis, but found both conditions to be non-severe. (*Id.*) ALJ Thomas cited several factors for determining Ms. W.'s physical impairments to be non-severe. First, he noted that Ms. W.'s diabetes mellitus was uncontrolled at times due to medication noncompliance, but that her symptoms improved when her medication compliance did. (*Id.*) ALJ Thomas also found that Ms. W.'s history of deep vein thrombosis was non-severe her condition was not continuing in nature. (*Id.*). He determined that the state agency medical consultant's conclusions that both conditions were non-severe was consistent with the overall evidence in the record, and therefore gave them great weight. (*Id.*)

At Step 3, ALJ Thomas determined that none of Ms. W.'s severe impairments, nor the combination of her various impairments, met or equaled the severity of the listed impairments in 20 C.F.R. Part 404 Subpart P, Appx. 1. (R. 13.) He assessed Ms. W.'s severe mental impairments and considered whether the "paragraph B" criteria in listings 12.03, 12.04, and 12.05 (paragraph D in listing 12.05) were satisfied. To satisfy these criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulty maintaining concentration, persistence, or pace; and repeated episodes of decompensation, each of extended duration. 20 C.F.R. § 404(P) Appx. 1. ALJ Thomas found that Ms. W. suffered from only mild restrictions in activities of daily living, and moderate restrictions in social functioning and concentration, persistence, or pace, and that she had suffered no episodes of decompensation of an extended duration. (R. 13–14.) ALJ Thomas also considered whether Ms. W. met other criteria in listing 12.05, but ultimately concluded that she did not. (R. 15–16.)

At Step 4, ALJ Thomas found that Ms. W. had the residual functional capacity to perform work at all exertional levels, but that she required certain non-exertional limitations. Specifically, he limited Ms. W. to work with only very basic instructions,

2

routine work with changes to instructions no more than once a week, with changes to be made gradually. (R. 16.) He further limited her to simple, unskilled tasks with limited stress, and no high production goals or fast-paced assembly line work. (*Id.*) Finally, he found Ms. W. could have only brief and superficial contact with others. (*Id.*)

At Step 5, ALJ Thomas determined that Ms. W. was capable of performing work according to her RFC, and that sufficient suitable jobs exist in the national economy. (R. 23.) He cited the vocational expert's testimony, who suggested that Ms. W. could perform the job of housekeeper or cleaner II. (*Id.*) Accordingly, he determined that Ms. W. was not disabled.

## II.     Analysis

When reviewing a "not disabled" determination, the Court does not seek to impose its own opinion on the record. Instead, the Court's review is limited to whether the decision is supported by "substantial evidence on the record as a whole," and is free from legal error. *Gann v. Berryhill*, 864 F.3d 947, 950 (8th Cir. 2017); *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). "Substantial evidence is less than a preponderance of the evidence, but is such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion." *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014) (internal citations and quotation marks omitted). When reviewing the Commissioner's decision, the Court must consider both evidence supporting the decision and evidence in the record that "fairly detracts from that decision." *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005). However, the Court may not reverse the Commissioner's decision simply because substantial evidence in the record could support a different conclusion. *Gann*, 864 F.3d at 950; *Reed*, 399 F.3d at 920. Rather, reversal is only warranted when the Commissioner's decision is not reasonable; i.e., it is outside "the available zone of choice." *See Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011) (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008).

### A.     Ms. W.'s Diabetes Mellitus

3

Ms. W. argues that ALJ Thomas erred when he determined that her diabetes mellitus was non-severe.[1] She argues that he overlooked the ongoing nature of her struggle to manage her diabetes and the frequency with which it was poorly controlled. Ms. W. also emphasized the role that her intellectual disability played in making it difficult to control her condition through either diet or medication.

The Court disagrees with Ms. W. for several reasons. And finds that ALJ Thomas's conclusion on this point is supported by substantial evidence in the record as a whole. First, the record demonstrates that Ms. W.'s diabetes mellitus is largely controlled with medication. When Ms. W. experienced an increase in symptoms, it was due to treatment noncompliance. (*See, e.g.*, R. 1054–55, 1061–62 (diabetes mellitus poorly controlled when regularly missing medication and following inconsistent diet).) However, Ms. W.'s symptoms improve greatly when she follows treatment consistently. (*See, e.g.*, R. 1083–84.) Indeed, ALJ Thomas noted that Ms. W.'s A1c level was improving with treatment. (R. 12.) When a condition can be effectively treated, it is not severe. *Phillips v. Colvin*, 721 F.3d 623, 631 (8th Cir. 2013); *cf.* 20 C.F.R. § 404.1530(b) (failure to follow prescribed treatment will result in a finding of not disabled). To the extent that Ms. W. argues that her noncompliance is justified due to her intellectual impairments, this argument is belied by the fact that Ms. W.'s compliance has improved over time, particularly when she receives services to help her remember to take the medication. (*Compare* R. 1054–55 *with* R. 1083–84.)

Second, the Court finds that the record supports ALJ Thomas's conclusion that Ms. W.'s diabetes mellitus does not cause more than minimal limitations in her ability to perform basic work activities. *See* 20 C.F.R. § 404.1522(a) (defining non-severe impairment as one that "does not significantly limit [one's] physical or mental ability to do basic work activities."); *see also* 20 C.F.R. 416.922(a) (same). An examination of the record demonstrates that Ms. W. is capable of many basic activities of daily living, such as walking daily, shopping in stores regularly, and performing chores such as

---

[1] The Court is troubled by Ms. W.'s assertion that the Commissioner would only be able to make an argument defending the ALJ's conclusion on this point in "bad faith" and that taking such a position would be "irresponsible." (Pl.'s Mem. at 10.) Such rhetoric comes close to crossing the line between zealous advocacy and a personal attack on the integrity of opposing counsel. The Court finds nothing in the Commissioner's brief to justify such aspersions.

taking out the garbage and doing laundry. (*See, e.g.*, R. 299–306.) These activities support ALJ Thomas's conclusion that Ms. W.'s diabetes would not impair her ability to do basic work activities.

Third, the state medical consultants both determined that Ms. W.'s diabetes mellitus was not severe. (R. 127, 144.) ALJ Thomas gave these opinions significant weight because they were consistent with the record as a whole. (R. 12.) Overall, the Court determines that ALJ Thomas's finding that Ms. W.'s diabetes mellitus is not severe was supported by substantial evidence.

### B.  The RFC Finding and Hypothetical Questions

Ms. W. argues that there is a contradiction between the final agency decision and the hypothetical questions that ALJ Thomas asked of the vocational expert during the August 5, 2016 hearing. Specifically, she asserts that because ALJ Thomas asked the vocational expert to consider the impact of diabetes mellitus and deep vein thrombosis in his hypothetical questions regarding Ms. W.'s ability to work, a contradiction exists between these questions and his ultimate conclusion that these conditions were not severe. Ms. W. asserts that this apparent conflict requires reversal. The Court determines that this argument is without merit.

First, the Court finds no inconsistency within ALJ Thomas's determination. His hypothetical questions to the vocational expert are part of the record, but neither make up part of his final determination nor control it. Indeed, it is reasonable to "test" greater limitations during the hearing—which occurs prior to the ALJ's final review of all the records—so as to ensure that the decision-making is as thorough as possible. ALJs who fail to do this risk improperly deciding a claimant's case. *See Gilbert v. Apfel*, 175 F.3d 602, 604 (8th Cir. 1999) (remanding when an ALJ failed to account for all impairments in their hypothetical questions). Simply because the ALJ includes these questions in his hypotheticals does not obligate him to deem them severe. Thus, the Court declines Ms. W.'s invitation to find conflict where none exists.

Second, even if an inconsistency did exist, this Court must read the ALJ's determinations with a lenient eye. The Eighth Circuit instructs lower courts to

"harmonize statements where possible," and to avoid nitpicking when reviewing ALJ determinations. *Chismarich v. Berryhill*, 888 F.3d 978, 980 (8th Cir. 2018). Indeed, this "deferential standard of review precludes [the Court] from labeling findings as inconsistent if they can be harmonized." *Id.* The Court concludes that harmonization is possible, as discussed above, and therefore finds no conflict.

Third, Ms. W. has cited no case that supports the assertion that ALJ Thomas was bound by the impairments contemplated in his hypothetical questions to the vocational expert in this case. *Gilbert*, 175 F.3d 602, does not carry the day for Ms. W. In *Gilbert*, the Court remanded due to the ALJ's failure to account for all impairments, noting that "the ALJ's hypothetical questions…omitted impairments that he ultimately found present." *Id.* Ms. W. is correct that the reverse situation exists here—the ALJ's hypothetical questions included more impairments than he ultimately found to be severe—however, unlike the situation in *Gilbert*, the situation here does not amount to reversible error. Indeed, the *Gilbert* court specifically contemplated the course of action taken in this case, stating an ALJ is "certainly entitled to find at the end of the hearing fewer or less severe impairments than he tentatively posed to the vocational expert." *Id.*; *see also Banks v. Massanari*, 258 F.3d 820, 828 (8th Cir. 2001) (citing *Gilbert*, 175 F.3d at 604.)

Finally, even if ALJ Thomas's hypothetical questions and ultimate determination were conflicting, Ms. W. cannot demonstrate harm. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."). The vocational expert testified that there were several jobs that Ms. W. could perform even with additional exertional limitations, such as bagger, paper folder, folding machine operator, or packager. (R. 91–92.) The vocational expert further testified that sufficient numbers of these jobs exist in the national economy. (*Id.*) Thus, even if ALJ Thomas had decided that the diabetes mellitus and the deep vein thrombosis were severe impairments, and even if additional limitations were built into the RFC as a result, Ms. W. would have received the same "not disabled" determination. Consequently, any error that might exist in ALJ Thomas's questioning of the vocational expert is ultimately harmless, warranting affirmation of his determination. *E.g.*, *Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007) (finding affirmation appropriate where harmless error existed).

# ORDER

For all the reasons stated above, **IT IS HEREBY ORDERED THAT:**

1. Plaintiff's motion for summary judgment **(ECF No. 17)** is **DENIED**;
2. Defendant's motion for summary judgment **(ECF No. 19)** is **GRANTED**; and
3. This matter is dismissed with prejudice.

**Let Judgment be entered accordingly.**

Dated: March 13, 2019

*s/ Katherine Menendez*
Katherine Menendez
United States Magistrate Judge